Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
225 Santa Monica Boulevard, Suite 700
Santa Monica, California 90401
Telephone Number:  (310) 860-0770
Facsimile Number:   (310) 860-0771

Attorneys for plaintiff,
PATRICIA L. LACY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFONRIA, WESTERN DIVISION

| | |
|---|---|
| PATRICIA L. LACY,<br><br>   Plaintiff,<br><br>vs.<br><br>DIGNITY HEALTH, ST. JOHN REGIONAL MEDICAL CENTER, and DOES 1 to 100, inclusive,<br><br>   Defendants. | Case No.:<br><br>**PLAINTIFF PATRICIA L. LACY'S COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) RETALIATION FOR TAKING MEDICAL LEAVE UNDER THE FAMILY AND MEDICAL LEAVE ACT (29 U.S.C. §2615);**<br><br>**DEMAND FOR JURY TRIAL** |

## SUMMARY

This is an action by plaintiff, Patricia L. Lacy ("plaintiff" or "Lacy"), whose employment with Defendants Dignity Health ("Dignity") and St. John Regional Medical Center ("St. John Regional") (collectively "Defendants") was wrongfully terminated for lawfully exercising her rights under the Family and Medical Leave Act ("FMLA"). Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to 29 U.S.C. §2615, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

## JURISDICTION AND VENUE

1. Plaintiff's action is authorized by 29 U.S.C. §2615, which prohibits an employer from interfering or retaliating against an employee for exercise of FMLA rights. Jurisdiction is conferred on this Court by 29 U.S.C. §2615(2), providing an action to recover damages or e  equitable relief may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction. Venue is proper in the Central District of California in that the wrongs alleged herein occurred within the County of Ventura, within the Central District.

## PARTIES

2. *Plaintiff:* Plaintiff Lacy is, and at all times mentioned in this Complaint was, a resident of the County of Ventura.

3. *Defendants:* Defendant Dignity is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Ventura. Defendant's place of business, where the following causes of action took place, was and is in the County of Ventura. Defendant St. John Regional is, and at all times mentioned in this Complaint


was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Ventura. Defendants' place of business, where the following causes of action took place, was and is in the County of Ventura.

4. *Doe defendants:* Defendants Does 1 through 100 are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

5. *Relationship of defendants:* All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision of, one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and

would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

6. Defendants Dignity and St. John Regional both directly and indirectly employed plaintiff Lacy, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

7. In addition, defendants Dignity and St. John Regional compelled, coerced, aided, and abetted the retaliation, which is prohibited under Family Medical Leave Act ("FMLA")

8. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

9. *Plaintiff's hiring:* On May 7, 2012, defendants hired plaintiff as a cardiovascular research program manager. Despite the title "manager," plaintiff's role with defendants was primarily as a cardiovascular stem cell research nurse.

10. *Plaintiff's job performance:* At all times, plaintiff performed her duties in an exemplary manner. In fact, plaintiff received exceptional yearly reviews.

11. *Plaintiff's protected status and activity:*

    a. Plaintiff Lacy is a 64-year-old woman.

    b. Lacy was forced to take protected medical leave for work-related stress, anxiety, and depression under FMLA.

    c. After her medical leave, Lacy was not permitted to return to work in her job position with medically-necessary accommodations.

12. *Plaintiff's employment status:*

    a. Lacy worked more than 900 hours of overtime during her employment with defendants, but was never paid for any overtime.

  b. Defendants contend that Lacy was a manager; however, Lacy did not perform a single managerial role nor supervise any employees.

  c. Defendants admitted that Lacy's title was given to her specifically so that they could avoid paying her overtime. Lacy asked Joe Nunes ("Nunes"), her supervisor at the time, why she was given the title of manager when, in fact, she had no supervisory responsibilities or anyone to manage. Nunes replied, "Because being a manager would make the position exempt" and ineligible for overtime pay.

13. *Defendants' adverse employment actions and behavior:*

  a. From the start of plaintiff Lacy's employment, defendants ill equipped her to perform the functions of the job. On her first day of work, she was given no office, desk, supplies, or computer.

  b. On or around July 20, 2012, Nunes was out on medical leave, and Lacy had no alternative supervisory support. She met with Kim Wilson ("Wilson"), Dignity's chief operations officer, about the lack of support. On or around October 11, 2012, Wilson responded by e-mail, "I hope to have resource response soon." In or around October 2012, Nunes returned from medical leave and was replaced by Tom Anderson ("Anderson").

  c. On or around March 5, 2013, Lacy e-mailed Anderson, stating, "I am overloaded with work and paperwork and need help . . . I really need assistance today . . . just letting you know that Research needs assistance to grow the program in the form of someone to do administrative tasks." On or around March 14, 2013, Wilson e-mailed Lacy, "I also talked to Tom and he will work on getting you some much needed help." On or around March 22, 2013, Wilson e-mailed Lacy, "let me know if you need help on anything." On or around March 24, 2013, Lacy e-mailed Wilson back, "I do need help—the research program desperately needs assistance to grow," and added, "I sent the following e-mail to Tom [Anderson] with no reply." In fact, Lacy did not have the authority to hire and fire employees.

  d. On or around May 22, 2013, Anderson stated that Lacy would have the

assistance of temporary worker Laura Weiss ("Weiss") in the research department as long as she needed it. Anderson then withdrew his offer and said that Weiss' position would be terminated.

  e. On or around May 2013, Anderson informed all managers that they must take six days of paid time off by July 2013. Anderson notified Lacy that she could not take time off.

  f. On or around July 1, 2013, plaintiff Lacy was given an exceptional yearly and quarterly review.

  g. On or around July 22, 2013, Nunes e-mailed Lacy, "if it seems as though I'm adding more work, I apologize." Lacy replied that she was frustrated "especially with working weekends" and that "I am not making any headway and going backwards. I have absolutely no personal life."

  h. On or around August 2013, Lacy was informed that another employee, Lindsey McFarland ("McFarland"), would be joining the department. McFarland was a woman in her 20s who had no medical knowledge or background. At the time McFarland was hired, Lacy was told that she would not be burdened by having to train her.

  i. On or around August 8, 2013, however, Lacy was asked to train McFarland "everything about nursing." Prior to this request, McFarland had received training from another employee, Jen Ramirez ("Ramirez"). When Lacy asked McFarland what she had learned, McFarland responded, "I know nothing." Lacy then ascertained that it would take a substantial amount of time to train McFarland.

  j. On or around August 9, 2013, Lacy was written up for alleged "insubordination" for not training McFarland, although she had been instructed to do so only the day before. The insubordination disciplinary action was dated August 8, 2013, and was issued before defendants discerned whether Lacy had or had not performed the training in question.

  k. Following this illegitimate and unfounded write-up, Lacy began

experiencing heart palpitations, hypertension, and unhealthy EKG changes.  Due to her deteriorating physical state, Lacy's physician placed her on a medical leave of absence.  Thus, on or around August 9, 2013, Lacy was forced to take protected medical leave for work-related stress, anxiety, and depression.

   l.   On or around August 22, 2013, Lacy wrote a letter to human resources in reply to the unwarranted disciplinary action for insubordination.  In the letter, Lacy took apart each of defendants' attacks, including their peremptory insubordination write-up.  Her letter was ignored.

   m.   On or around August 23, 2013, Lacy was cleared to return to work with limited restrictions.  Specifically, the restrictions were that her work schedule was not to exceed 40 hours per week, and she was to refrain from additional duties outside her job description.  On two occasions after she was cleared to return to work, Lacy called defendants asking to return to work with restrictions.  Defendants denied her reasonable request for accommodations on each occasion.  The only option Lacy was given was to work 14 to 15 hours a day, seven days a week, without any overtime pay or not to work in research at all.

   n.   On or around August 28, 2013, Lacy met with Nunes, Anderson, and Angela Meza ("Meza"), a Dignity HR representative.  In that meeting, Meza told Lacy that she could not return to work with restrictions.  In fact, these restrictions were reasonable and consistent with Lacy's job description.

   o.   On or around September 11, 2013, Lacy sent Meza a letter requesting to return to work.  She received no response.  On September 24, 2013, Lacy sent Meza another letter, requesting a reply to her September 11 letter.  Again, she received no response.

   p.   On or around September 27, 2013, Meza called Lacy and again insisted on a meeting with a large number of people.  On October 3, 2013, Lacy responded that her therapist had advised against the intimidating meeting and again requested a one-on-one meeting.

q. On or around October 9, 2013, Lacy called employee health supervisor Heather Patterson ("Patterson") to inquire into returning to work. Patterson replied that she was confused as to why defendants did not reinstate Lacy, as her doctor had cleared her to return to work. Although Patterson promised to discover the answer and inform Lacy, she failed to return Lacy's calls.

r. On or around October 24, 2013, Lacy obtained another doctor's note clearing her for work with restrictions. Meza demanded that Lacy participate in a meeting with numerous individuals, although the doctor had stated that Lacy should not be subjected to meetings with more than one individual.

s. On or around November 13, 2013, Lacy received a form titled "Policy and Procedure for Reporting Occupational Injury or Illness." On or around December 30, 2013, Nunes made an error and paid Lacy 80 hours' worth of her salary, revealing that defendants' management was able to manipulate employee time cards.

t. Meanwhile, defendants urged Lacy to apply to other positions, but made it near impossible to do so. When Lacy was finally able to, she applied to numerous jobs at Dignity for which she was qualified and had the requisite experience. Although Lacy was assured that she would be able to find reemployment through this method as an "accommodation," she was rejected from all of the job positions for which she applied. Moreover, Lacy is not the only employee who went on a medical leave of absence and was not accommodated. Other employees that Lacy knows of have also applied to other positions at Dignity as a way of allegedly being accommodated, but have not been hired for another position at Dignity.

14. *Defendants' termination of plaintiff's employment:*

a. On or around January 16, 2014, plaintiff Lacy received a letter indicating that her employment with Defendants would be terminated on June 16, 2014. Thus, after more than a year of exemplary performance, after she went on medical leave and requested reasonable accommodations, and immediately after she reported her work-related disability, defendants wrongfully terminated Lacy's employment.

b. Lacy suffered from a marked increase in depression, stress, and anxiety, necessitating prescription medication. Lacy was forced to regularly visit a licensed professional regarding her emotional state.

c. After her employment was wrongfully terminated, Lacy's name and credentials were still being used on clinical trials.

15. *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

16. *Non-economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

17. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of her age, disability, medical leave, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of her age, disability, medical leave,

and/or good faith complaints was "despicable" and subjected her to cruel and unjust hardship, in knowing disregard of her rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

      c. *Fraud:* In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive her of legal rights.

18. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

## FIRST CAUSE OF ACTION
## (Violation of Family and Medical Leave Act
## (29 U.S.C. 2615.) (Retaliation for taking FMLA)—
## Against both Defendants)

19. The allegations set forth in paragraphs 1 through 18 are re-alleged and incorporated herein by reference.

20. As a direct result of Plaintiff exercising her FMLA rights, Defendants took the aforementioned adverse actions against Plaintiff. Absent Plaintiff exercising her FMLA rights Plaintiff would not have been terminated.

21. Defendants violated FMLA by retaliating against Plaintiff for taking protected leave. Specifically, Defendants violated 29 U.S.C. 2615 which prohibits employers from interfering with an employee's exercise of FMLA rights or discriminating against an employee for the exercise of FMLA rights. Moreover, 29 U.S.C. 2611(4)(A)(ii)(I) extends the definition of employer to any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.

22. Form FMLA violations 29 U.S.C. 2617 allows an employee to recover lost wages, benefits, interest, liquidated damages, attorney fees, expert witness fees, costs of

suit, and appropriate equitable relief.

23.  The adverse actions taken by Defendants against Plaintiff were taken in order to interfere with Plaintiff's exercise of her FMLA rights; and to discriminate and retaliate against Plaintiff for the lawful exercise of his FMLA rights.

## PRAYER

WHEREFORE, plaintiff, Patricia L. Lacy, prays for judgment against defendants as follows:

1. For general and special damages according to proof;
2. For exemplary damages, according to proof;
3. For pre-judgment and post-judgment interest on all damages awarded;
4. For reasonable attorneys' fees;
5. For costs of suit incurred;
6. For such other and further relief as the Court may deem just and proper.

ADDITIONALLY, plaintiff, Patricia L. Lacy, demands trial of this matter by jury. The amount in controversy exceeds $75,000.

Dated:  December 21, 2015         SHEGERIAN & ASSOCIATES, INC.

By: _____
Carney R. Shegerian, Esq.

Attorneys for plaintiff,
PATRICIA L. LACY